## FRANK HANDLEY v. STATE.

No. A-9117.   Dec. 18, 1936.
Rehearing Denied March 12, 1937.
(65 Pac. [2d] 1026.)

J. Q. A. Harrod, Laynie Harrod, and Melone, Porter, Melone & Melone, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., for the State.

DAVENPORT, J.   The plaintiff in error, the defendant in the trial court, was charged with the possession of intoxicating liquor with intent to barter, sell, give away, or otherwise furnish the same to others; was convicted and sentenced to serve 60 days in the county jail and to pay a fine of $150 and cost.   From which judgment and sentence he appeals.

The testimony on behalf of the state shows that the defendant lives in El Reno, Okla.; that George Menz owns a farm on which there is an eight-room house, and basement; that his son Lawrence Menz was occupying the premises.   Lawrence Menz stated:

"About 30 days prior to the 4th of September, 1935, I rented the basement to a man named Frank Handley, the defendant in this case.   I was paid five dollars a week for the basement; I saw whiskey in the basement; the defendant Frank Handley came to the house practically every day and took packages into and out of the basement."

Lawrence Menz also stated they had fruits and vegetables in the basement, and that the outside door was unlocked and any one could come and go into the basement at will.   Further testifying, witness stated:

"I never asked anyone to go into the basement, in fact I never said anything about the basement as I had rented it to Frank Handley."

W. N. Farris and Roy Pool testified, in substance, that on Sunday prior to Wednesday, September 4, 1935:

"We saw the defendant and his son leaving his home at El Reno; we drove east on Highway 66, and as we passed the Menz home, which sets about two blocks north of the highway, we saw the defendant's car parked in the rear of the Menz home; we drove on east a ways and came back up even with the house and saw the defendant with a package in his hand."

The state offered further testimony that the witnesses saw Frank Handley at the premises but never saw him go into the house. The officers further stated on September 4, 1935, they procured a search warrant and searched the Menz premises, and in the basement of the house found approximately eight gallons of corn whisky, and eighty pints of bottle and bonded, or tax-paid, whisky. Frank Handley was not there, and they did not find anything in the search that belonged to him that they could identify.

The officers further stated on Sunday, prior to the search on Wednesday, they did not know or could not tell what the defendant had in his hand when he came out of the Menz house.

There was also some testimony introduced to show that Jake Kelley had whisky in the basement.

W. N. Farris further stated that since the arrest of the defendant, "I talked with Frank Handley several times, and the conversation was to the effect that a man had to do something to make a living, and that they ought to get a break." This statement was objected to by the de-

fendant, objection overruled, and exception saved. The witness further stated:

"The reason why I believe the whisky belonged to Frank Handley is because people told us the whisky belonged to Handley. I did not get any of this information from Handley, but I saw him coming out of the house with a case of fruit jars on Sunday morning before we made the raid; Handley came down the stairs out of the house with a package in his hands; I did not see him come out of the basement. I was less than two blocks away when I saw Handley come out of the house on Sunday before the raid was made the following Wednesday, September 4, 1935. The reason I think Handley kept the whisky at this place is this whisky came out of the cellar, and at the time we made the raid, and after what somebody had told us, I saw Handley bring out a package in brown paper out of the house, and the fact we got whisky out of the basement when we made the search made me believe Handley owned it."

The foregoing is all the testimony offered by the state. The defendant did not offer any evidence.

Seven errors have been assigned by the defendant. He discusses only two of the errors:

"1. That the verdict of the jury is contrary to both the law and the evidence.

"2. The trial court erred in finding and refusing to sustain the defendant's demurrer to the evidence offered by the state, at the close of the state's evidence."

The defendant in his argument treats both these errors together and insists that the evidence is wholly insufficient to sustain the verdict of the jury. The defendant further argues that the witness Lawrence Menz is an accomplice of his and that he had aided and assisted in keeping the whisky in the basement; that the testimony of Menz is not corroborated by any witness; and he further argues that in order that the conviction be sustained

there must be some testimony connecting him with the offense other than the witness Lawrence Menz.

We cannot agree with the contention of the defendant that Lawrence Menz is an accomplice of his in the possession and handling of the whisky found in the basement of the Menz home, but if the defendant's contention as to Menz being an accomplice be true, this court has held that evidence corroborative of an accomplice need not directly connect the defendant with the commission of the crime; it is sufficient if it tends to connect him with its commission, and it is not necessary that the evidence tending to corroborate an accomplice be direct, but may be circumstantial only. Dwight Mitchell v. State, 59 Okla. Cr. 393, 60 Pac. (2d) 627.

As shown by the evidence in this case, Lawrence Menz had rented the basement to the defendant Handley, and Handley made trips back and forth regularly carrying packages to the basement and out of the basement. Menz knew the whisky was in the basement. The officers saw the defendant's car parked at the Menz home and saw the defendant come out of the house and put a package in his car. This testimony furnished strong circumstantial evidence tending to connect the defendant with the ownership of the whisky that they found in the basement at the Menz home. The defendant did not deny that the whisky found in the basement of the Menz home was his. We hold that the renting of the basement of the house in which Lawrence Menz was living to the defendant Handley and receiving the rent from him is not sufficient to make Menz an accomplice of the defendant in handling the whisky found in the basement of the Menz home.

In Killough v. State, 59 Okla. Cr. 429, 60 Pac. (2d) 808, the defendant Killough argued that Ralph and Roger Helm, who testified for the state, were accomplices of

his, and that their testimony was not corroborated. The testimony showed that Ralph Helm had rented the defendant a place to place his still on the farm; that both Ralph and Roger Helm knew the still was there; they had collected rent from Killough for the use of the land; yet this court held that Ralph and Roger Helm were not accomplices of the defendant in the crime charged against him. The evidence in this case shows that Lawrence Menz rented the basement to this defendant, and was paid for its use, and it is perfectly clear in this case that Menz knew for what purpose the defendant was renting the basement. The testimony borders very closely on the line that Menz was an accomplice. Menz knew the whisky was being stored in the basement, and that the defendant was going back and forth with packages in and out of the basement; he did not complain or object to the actions of the defendant, but he denies he had anything to do with the whisky.

The testimony in this case is not sufficient to show that Lawrence Menz is an accomplice of the defendant. His conduct, however, is not such as is expected of a good law-abiding citizen. If not aiding and abetting, he acquiesced in the defendant and his associates violating the law, and did not report the fact that the defendant was storing whisky in the basement of his home to the officers.

The evidence has been carefully examined, and the authorities cited in support of the contention of the defendant have been carefully studied, and the guilt of the defendant is not denied. The testimony is amply sufficient to sustain the judgment. The record fails to show any legal reason for the reversal of this case.

The judgment is affirmed.

EDWARDS, P. J., and DOYLE, J., concur.